1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWIRE PACIFIC HOLDINGS, INC., and
THE EMPLOYEE HEALTH CARE PLAN
FOR THE BOTTLING EMPLOYEES OF
SWIRE PACIFIC HOLDINGS, INC. and ITS
AFFILIATES,

                Plaintiffs,

    v.

JAMES JONES, and JEFFREY R. CAFFEE
LEGAL, PLLC d/b/a THE LAW OFFICES
OF JEFFREY R. CAFFEE,

                Defendants.

CASE NO. C19-1329RSM

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

## I.      INTRODUCTION

      This matter comes before the Court on Plaintiffs Employee Health Care Plan for the Bottling Employees of Swire Pacific Holdings, Inc. and its' Affiliates ("Plan") and Swire Pacific Holdings, Inc., d/b/a Swire Coca-Cola, USA ("Swire")'s Motion for Summary Judgment. Dkt. #39. Defendants James Jones and Jeffrey R. Caffee Legal, PLLC oppose. For the reasons stated below, the Court GRANTS Plaintiffs' Motion and dismisses this case.

## II.      BACKGROUND

      On July 11, 2018, Defendant James Jones (a beneficiary of the ERISA Plan at issue) was injured in a car accident, the details of which are not at issue in this case. Dkt. #28 ("Amended

Complaint"), ¶ 8; Dkt. #38 ("Answer"), ¶ 3.  The Plan paid $407,622.76 in medical bills on Mr. Jones's behalf.  Amended Complaint, ¶ 9; Answer, ¶ 3.

The benefits provided to Mr. Jones under the Plan were fully funded by Swire and its employees, and not through an insurance carrier.  Dkt. #40 ("Sorenson Decl."), ¶ 3.  The controlling document for the Plan at the time of Mr. Jones' injury was a Summary Plan Description ("SPD"), effective from January 1 to December 31, 2018.  *Id.* at ¶2; *see also* Dkt #37.  There is no separate or additional master plan document for the Plan.  *Id.*

The SPD contains a "Subrogation and Right of Recovery" section.  See Dkt. #28-1 ("Summary Plan Description" or "SPD") at 53–54.  This section states, *inter alia*, "[i]f You receive any payment as a result of an Injury, Illness or condition, You agree to reimburse the Plan first from such payment for all amounts the Plan has paid and will pay as a result of that Injury, Illness or condition, up to and including the full amount of Your recovery."  *Id.* at 54. Later this section states, "[b]y accepting benefits from the Plan, You acknowledge that the Plan's recovery rights are a first priority claim and are to be repaid to the Plan before You receive any recovery for Your damages.  The Plan shall be entitled to full reimbursement on a first-dollar basis from any payments, even if such payment to the Plan will result in a recovery which is insufficient to make You whole or to compensate You in part or in whole for the damages sustained."  *Id.*

Mr. Jones settled his claims relating to the car accident for $150,000.  Amended Complaint, ¶ 12; Answer ¶6.  He has not reimbursed the Plan for the medical bills.

Plaintiffs thus bring claims under 29 U.S.C. § 1132(a)(3) to impose an equitable lien or constructive trust and for restitution with respect to the disputed funds.  Amended Complaint. They seek an Order enforcing the terms of the Plan and requiring Defendants to turn over the

full amount of the disputed funds, as well as attorneys' fees pursuant to the express terms of the Plan and 29 U.S.C. §1132(g).

Defendants bring affirmative defenses alleging that the SPD is unenforceable, that Plaintiffs' claims violate ERISA's anti-inurement provisions and are barred by ERISA's prohibition on self-dealing, that Plaintiffs' claims are prohibited by Washington law protecting tort victims from health insurance subrogation when the victims are not "made whole," that the relief sought is not appropriate or equitable, and that it violates the 5th and 14th Amendments. *See* Answer.

On January 7, 2020, the Court issued an Order denying Defendants' Motion to Dismiss. Dkt. #37.  In that Order, the Court found that "Plaintiffs have adequately pled that the SPD document attached to the Complaint satisfies the requirements of ERISA even though it is serving both as a summary plan description and the Plan document itself, and that in any event its' reimbursement provision is binding on Defendants."  *Id.* at 4.  The Court addressed Defendants' anti-inurement arguments, found them baseless, and stated "[e]ven if the Court were to consider Defendants' arguments at a later stage it would find them unavailing, unless the factual record changes substantially."  *Id.* at 6.  The Court found that "[t]he law currently allows subrogation and reimbursement under these circumstances."  *Id*.  Finally, the Court found that "Defendants have no basis for [arguing reimbursement will violate ERISA's prohibition on self-dealing], and that reimbursement to the Plan is permitted, even if the Plan and the employer are one and the same."  *Id.*

## III.     DISCUSSION

### A. Motion to Strike

In their June 26, 2020, Response to the instant Motion, Defendants rely on the affidavit of Professor Roger Baron, an undisclosed expert witness.  Dkt. #43.  Defendants were required

to disclose expert witnesses no later than March 12, 2020. Dkt. #33 (Scheduling Order). Defendants failed to disclose any witnesses other than Mr. Jones. Dkt. #45 ("Howard Decl."), ¶ 2, Ex. 1. Plaintiffs were apparently unaware of Professor Baron prior to June 26 and move in their Reply to strike his affidavit pursuant to Rule 37(c)(1). Dkt. #44.

Defendants argue that Professor Baron is a "rebuttal fact witness in addition to his expert opinions." Dkt. # 46 at 2. Defendants assert that the late disclosure of Professor Baron is substantially justified and harmless within the meaning of Rule 37(c)(1).

To determine whether a late disclosure is substantially justified or harmless, courts consider (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). District courts are given "particularly wide latitude" in determining whether to issue sanctions, including the exclusion of evidence, under Rule 37(c)(1). *See Bess v. Cate*, 422 F. App'x 569, 571 (9th Cir. 2011).

The Court finds that Professor Baron is not a rebuttal fact witness as he is clearly being paid for his expert opinions and has no personal knowledge of anything he will be testifying about. The Court further finds that the timing of the "disclosure" is not substantially justified or harmless. Defendants did not really disclose Professor Baron as a witness, they attached his affidavit to their Response to the instant Motion. This robbed Plaintiffs of the ability to depose the witness, hire their own expert, or address his expert opinions in their Motion. The deadline for discovery passed in May; dispositive motions were due on June 10, 2020, the day the instant dispositive motion was filed. Defendants failed to move the Court to modify the scheduling order before simply filing this affidavit from an undisclosed expert. This has clearly prejudiced and surprised Plaintiffs. It is not reasonable to suggest that Plaintiffs should cure the prejudice

by scrapping their instant Motion, reopening discovery, filing a new summary judgment motion, and delaying trial—all contingent on the Court's permission, of course. The Motion to Strike is granted, and the Court will not consider arguments relying on this affidavit.

**B. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**C. Analysis**

There is no genuine dispute as to any material fact. The Court agrees with Plaintiffs that Mr. Jones received payment as a result of a covered injury, and that under the terms of the SPD he has agreed to reimburse Plaintiffs from such payment for all the amounts the Plan has paid.

Because the Plan has paid out more than $150,000, the $150,000 that he recovered is owed to the Plan—unless the Plan's reimbursement provisions are barred by law.

Defendants first argue that the Court should follow Washington state law preventing subrogation and reimbursement unless the insured is "made whole," relying heavily on *Rudel v. Hawai'i Mgmt. Alliance Ass'n*, 937 F.3d 1262 (9th Cir. 2019).  Dkt. #41 at 3–4.

Plaintiffs point out on that *Rudel* dealt with "whether two Hawaii insurance subrogation statutes were 'saved' from ERISA preemption," whereas this case has "no issue involving the ERISA 'savings' clause and self-funded ERISA plans [like the one at issue in this case] are not subject to Washington's insurance laws."  Dkt. #44 at 4 (citing RCW 48.43.001(27)(j) ("Health Plan" governed under the insurance code does not include "employer-sponsored self-funded health plans")).  Plaintiffs also argue that *Rudel* does not address the legal effect of an express disclaimer of the made whole rule by a self-funded ERISA plan.  Plaintiffs direct the Court to *Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995), where the Ninth Circuit found that the made whole doctrine (from California) only applies in the absence of an agreement to the contrary, describing the doctrine as a "gap filler" when the Plan is silent.

The Plan in this case states, "[b]y accepting benefits from the Plan, You acknowledge that the Plan's recovery rights are a first priority claim…. even if such payment to the Plan will result in a recovery which is insufficient to make You whole or to compensate You in part or in whole for the damages sustained."  *See above*.  Defendants do not address this express language in the Plan, or the argument that "an employee may sign away his or her make-whole right by accepting money from a plan that disclaims the make-whole doctrine," raised in Defendants' Motion, Dkt. #39 at 9.  Given all of the above, the Court finds that the state made whole doctrine is inapplicable in this case.

Defendants next argue that ERISA itself does not authorize subrogation or reimbursement, "nor does it bar such clauses or otherwise regulate their content." Dkt. #41 at 5 (quoting *Member Servs. Life Ins. Co. v. American Nat'l. Bank & Trust Co. of Sapula*, 130 F.3d 950, 958 (10th Cir. 1997)). Defendants cite to secondary sources criticizing subrogation and reimbursement in ERISA plans. *Id.* at 5–6. Plaintiffs point to Supreme Court rulings that ERISA allows a plan administrator to seek enforcement of subrogation and reimbursement provisions found in the plan. Dkt. #44 at 8 (citing *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361-62, 126 S. Ct. 1869, 1873-74, 164 L.Ed.2d 612, 619 (2006); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 94-95, 133 S. Ct. 1537, 1544, 185 L.Ed.2d 654, 662-63 (2013)). The Court continues to find that the law currently allows subrogation and reimbursement under these circumstances.

Defendants argue that the Plan is in fact insured, not self-insured, citing to "ten years of Department of Labor Filings." Dkt. #41 at 6–7. The evidence cited is attached to Professor Baron's stricken affidavit and refers to years prior to the year when this incident occurred. The Court has already ruled that it will not consider the expert opinion of Professor Baron on this subject. Further, Plaintiffs point out that Ms. Sorenson, the VP of Human Resources at Swire, has declared from her own personal knowledge that the Plan was self-insured in the applicable year and that this evidence is unrebutted. Dkt. #44 at 6. The Court finds no basis to disregard this evidence. Defendants have failed to create a genuine dispute of fact on this issue.

Defendants argue that "100% of the subrogated recovery – if permitted by this Court – will be paid to Regence Bluecross," citing again to Professor Baron's affidavit. Dkt. #41 at 10. Defendants argue this violates ERISA's anti-inurement provisions. The Court has previously ruled that Defendants' anti-inurement arguments were baseless based on the record and finds that the record has not changed.

Finally, Defendants argue that Plaintiffs are limited to an equitable remedy limited to the imposition of a constructive trust, and that only $60,500 remains in trust. Dkt. #41 (citing *Montanile v Board of Trustees of Natl. El. Indus. Health Benefit Plan*, __, U.S. __, 136 S.Ct. 651, 658-59 (2016)). *Montanile* allows a Plan to recover "specifically identified funds that remain in defendant's possession or against traceable items that the defendant purchased." 136 S. Ct. at 659. Moreover, a lien is only eliminated when a defendant dissipates the fund on nontraceable items. *Id*. Plaintiffs argue they have specifically identified a settlement fund of $150,000, Defendants admit to receiving this amount, and that Defendants have not shown that any of the funds have been dissipated. Dkt. #44 at 9. Plaintiffs contend that "[w]ithout a showing of how much of the $150,000.00 is dissipated on non-traceable items, *Montanile* is inapplicable and Plaintiffs are entitled to an order awarding $150,000.00." *Id*. The Court agrees, and finds Defendants' unexplained statement that only $60,500 remains in trust insufficient to limit recovery to that amount at this time.

The Court finds that Defendants have abandoned their remaining affirmative defenses involving ERISA's prohibition on self-dealing, provisions on equitable relief, and the 5th and 14th Amendments to the Constitution. Defendants do not contest Plaintiffs' request for reasonable attorneys' fees.

## IV.    CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion for Summary Judgment, Dkt. #39, is GRANTED. The Plan is entitled to $150,000 in subrogation and reimbursement from Defendants, along with reasonable attorneys' fees. Plaintiffs may, **within 14 days** of this Order, move for an award of reasonable attorneys' fees and note it for consideration pursuant to LCR 7(d). Such motion shall be supported by evidence supporting both the attorney's hourly rate and hours expended.

1

2   DATED this 12th day of August, 2020.

3

4

5   RICARDO S. MARTINEZ
    CHIEF UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 9